OWENS, McCREA & LINSCOTT, PLLC
6500 N. Mineral Drive
Suite 103
Coeur d'Alene, ID  83815
Telephone:  (208) 762-0203
Facsimile:  (208) 762-0303
**Jeffrey R. Owens, ISB #7276**
jowens@omllaw.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE, on behalf of herself and her minor daughter: K.N.H. (DOB 2010)<br><br>Plaintiffs,<br><br>vs.<br><br>KOOTENAI HOSPITAL DISTRICT, a county hospital district, d/b/a KOOTENAI HEALTH and as KOOTENAI BEHAVIORAL HEALTH; LEONARD FITZSIMMONS, in his individual and employee capacity; and JOHN DOES I THROUGH V and CORPORATE DOES 1 THROUGH V,<br><br>Defendants. | CASE NO. 2:20-cv-00423<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

COME NOW the above-entitled Plaintiffs by and through their Attorneys of Record, JEFFREY R. OWENS of Owens, McCrea & Linscott, PLLC, and for a cause of action, complain and allege as follows:

**JURISDICTION, VENUE AND THE PARTIES**

1.      Plaintiff Jane Doe is the adoptive parent of one minor child, referred to herein as K.N.H.  Jane Doe is married to John Doe, who is K.N.H.'s stepfather.  Jane Doe and her minor

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 1

child were at all times relevant to this action residents of Kootenai County, within the State of Idaho.

2. Defendant KOOTENAI HOSPITAL DISTRICT, conducting business under the assumed business names "KOOTENAI HEALTH" and "KOOTENAI BEHAVIORAL HEALTH", hereinafter referred to simply as "KBH", is and at all relevant times, has been a public hospital district and/or a quasi-municipal corporation, with its principal place of business in Coeur d'Alene, Kootenai County, Idaho, which acts through its agents and employees.

3. Defendant LEONARD FITZSIMMONS is an employee of KBH acting under the color of state law. Mr. Fitzsimmons is sued in his individual and employee capacities.

4. As used in this Complaint, KBH includes all professional partners, physicians, agents and employees involved in the care and treatment of K.N.H., within the context of a health care provider/patient relationship.

5. Defendants John Does I through V and Corporate Does I through V, were at all times material hereto officers, directors, members, agents, contractors, employees, authorized representatives, subsidiaries, chapters, affiliates and assigns to the State of Idaho, Department of Health and Welfare, whose true names are unknown.

6. This Court has jurisdiction over Plaintiffs' claims of violations of federal constitutional rights, pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12132, et seq.

7. This Court has jurisdiction over Plaintiffs' state law claims set forth in this Complaint pursuant to supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a). Both federal and state claims alleged herein arose from a common nucleus of operative facts, the state actions are so related to the federal claims that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

8. Actions complained of herein took place within the jurisdiction of the United States District Court, District of Idaho, in that one or more of the Defendants reside in Idaho and Plaintiffs' claims for relief arose in this district. Accordingly, venue in this judicial district is proper under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

9. On or about November 7th, 2019, K.N.H., who was 8-years-old, was taken to KBH for psychiatric evaluation upon recommendation from the "BEST" outpatient program at Sacred Heart Hospital in Spokane, Washington. She was admitted and placed under the care of KBH staff physicians Dr. Lauren Boydston, Dr. John S. Helsell, and the nursing staff.

10. At the time of K.N.H.'s admission, Jane Doe informed KBH that K.N.H. was being transferred from the Sacred Heart Children's Hospital BEST program in Spokane, Washington.

11. Upon information and belief, KBH made no contact with the BEST program regarding K.N.H. at the time of her admission.

12. When KBH admitted K.N.H., Jane Doe was led to believe that she could not discharge K.N.H. from the facility. In other words, K.N.H. was not free to leave KBH. Further, KBH instructed Jane Doe that she could only visit K.N.H. between 6:00 -7:00 p.m. on any day of the week with an additional hour of visitation available on the weekends between 1:00-2:00 p.m.

13. K.N.H. did not want to be admitted to KBH and verbalized her desire to leave the facility on many occasions.

14. KBH, acting under the color of law, turned a voluntary commitment into an involuntary commitment.

15. After admitting K.N.H., KBH repeatedly placed her in locked seclusion and, on several occasions, subjected her to physical constraint.

16. On the seventh day of her admission (11/14/19), while locked in seclusion for a period of time due to behavior concerns, K.N.H. began coloring.  At about 15:56, a male nurse, later identified as Leonard Fitzsimmons, suddenly opened the door to the seclusion room, entered the room, cornered K.N.H., and forcibly removed a crayon from her right hand.  Based on closed-circuit video monitoring footage, Nurse Fitzsimmons forced K.N.H.'s right hand backward in an extreme hyperextension posture.  Immediately following this action by Nurse Fitzsimmons, K.N.H. grasped her right arm and wrist, began crying, and appeared visibly distraught and in pain.

17. K.N.H.'s right arm and wrist immediately swelled up and was exquisitely tender. Later that evening, at approximately 18:00, K.N.H.'s parents, John and Jane Doe, arrived for the parent visit hour.  During the visit, Jane Doe, a pediatric nurse, became concerned that K.N.H.'s arm was broken due to the presence of pain and swelling.  As John and Jane Doe left that evening at 19:00, they both pointed out the severe swelling to the KBH nursing staff and asked that an x-ray be obtained immediately to evaluate for injury.  John and Jane Doe had no ability to take K.N.H. from KBH to have an x-ray performed on their child at an outside facility.

18. After K.N.H.'s parents left, at approximately 19:30, K.N.H. was given ibuprofen and ice for the right arm and wrist pain and swelling, but no referrals were made to orthopedics or radiology for x-rays.

19. At about 10:20 am the next morning (11/15/19), Jane Doe stopped by KBH to drop off some toiletry items for K.N.H.  While she was unable to see K.N.H. at that time, a nurse told Jane Doe that K.N.H.'s wrist and arm were still swollen and that they would have the doctor look at it later that day.  The chart notes reflect that K.N.H. continued complaining of right arm and wrist pain and discomfort the entire day.

20. At approximately 16:51, Sarah Armstrong, a social worker at KBH, contacted Jane Doe and told her that the staff had a meeting earlier in the day and had discussed the injury to

K.N.H.  Ms. Armstrong mentioned that staff reviewed not getting into power struggles with K.N.H. over benign things like crayons.

21. At approximately 18:00, Jane Doe arrived at KBH for the 1-hour parent visit. She could tell during that time that K.N.H.'s arm and wrist were still very swollen and was, in her opinion, likely broken.  There is no indication that KBH provided K.N.H. any ice or ibuprofen on that day.  Also, no referrals were made to orthopedics or radiology at any time on November 15th, 2019.

22. At 8:11 am on Saturday, November 16th, 2019, Jane Doe contacted KBH and again requested an x-ray of K.N.H.'s wrist and arm.  Dr. Helsell called Jane Doe back at about 11:00 am, stating that K.N.H. was, in fact, having difficulty with flexion/extension, and that a wrist and arm exam had not been performed on November 15th because K.N.H. refused.  Nonetheless, Dr. Helsell indicated that an x-ray and orthopedic consultation would be ordered later that day.

23. The x-ray revealed a Salter-Harris type 2 fracture, indicative of a hyperextension mechanism of injury.  Dr. Keese was consulted and recommended splinting for the wrist and arm with follow-up x-rays each week for four weeks and a follow-up x-ray, bilaterally, at one year to assess the growth plates.

24. At about the time the x-ray results were confirmed, around 13:40, John Doe was already present at KBH for the 13:00 parent visit.  John Doe was informed of the x-ray results and then confronted Leonard Fitzsimmons, asking how K.N.H. had broken her arm.  Fitzsimmons stated that he did not know and that it could have been from K.N.H. hitting something. Fitzsimmons suggested that John Doe contact Dr. Keese to find out how these types of breaks happen.

25. At the 18:00 parent visit on Saturday, November 16th, 2019, John Doe again spoke to Fitzsimmons and asked if the break to K.N.H.'s arm had anything to do with an incident or

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 5

power struggle involving a crayon.  Nurse Fitzsimmons denied knowing anything about an incident involving a crayon, represented that there was no incident report of such an event, and denied knowing how the break to K.N.H.'s arm had occurred.  Suspicious that Nurse Fitzsimmons or someone at KBH had, in fact, broken their daughter's arm, John and Jane Doe reported the incident up the chain of command at Kootenai Health to the director of behavioral health services – Claudia Gehring-Miewald.  Jane and John Doe also reported the incident to the Coeur d'Alene Police Department.

26. On Monday, November 18th, 2019, Jane Doe received a conference call from KBH that was attended by the director of behavioral health services (Claudia Gehring-Miewald), the behavioral health program manager (Brandee Lawhead), and a patient advocacy specialist (Leah Stern).  During that conference call, Jane Doe was informed that Nurse Fitzsimmons and the security team had reviewed the seclusion room video earlier that morning and discussed the incident in detail.  She was told that yes, in fact, the injury to K.N.H.'s right arm did occur during an incident in which Nurse Fitzsimmons attempted to remove something from K.N.H.'s hand and, in the process, injured her right arm.

27. K.N.H. remained at KBH for an additional six (6) days during which Nurse Fitzsimmons continued to be in charge of K.N.H.'s care.

## COUNT ONE
### Child Abuse (Idaho Code §6-1701)

28. Plaintiffs incorporate the above paragraphs by reference.

29. A civil cause of action may be brought by or on behalf of any child against any person who (1) willfully causes or permits any child to suffer, or inflicts thereon unjustifiably physical pain or mental suffering; or (2) having the care or custody of any child, willfully causes

or permits the person or health of such child to be injured; or (3) willfully causes or permits such child to be placed in such situation that her person or health is endangered.

30. Plaintiffs herein allege that KBH and its staff did willfully cause, permit or inflict physical pain and mental suffering on K.N.H.

31. Plaintiffs herein allege that KBH and its staff did have care and custody of K.N.H., and while in its care and custody, KBH did willfully cause or permit K.N.H. to suffer injury to her person and her health.

32. Plaintiffs herein allege that KBH and its staff did willfully cause or permit K.N.H. to be placed in such a situation that her health and person were endangered.

33. The right to the care, custody, companionship, and control of one's children undeniably warrants deference and, absent a powerful countervailing interest, protection.

34. As a result of KBH's willful, reckless, malicious and outrageous conduct, Plaintiffs suffered damages to include past and future emotional and physical pain and suffering, mental anguish, emotional distress, disability, loss of society and companionship, expenses for past and future therapy, and punitive damages, as well as costs and reasonable attorneys' fees.

## COUNT TWO
### Negligence and Gross Negligence (Medical Malpractice)

35. Plaintiffs incorporate the above paragraphs by reference.

36. At the time of her admission and throughout her stay at KBH, K.N.H. was entitled to be treated with careful attention and vigilance by the KBH staff, who themselves had a duty to undertake the treatment and care of K.N.H. with a degree of skill and learning ordinarily possessed and exercised by other health care providers who are trained and qualified in the same or a similar field of care.

37. Defendants' conduct as described herein violated those standards of care and concern and failed to meet even a fraction of what one would reasonably expect in similar circumstances.

38. Thus, at all material times herein and during the care and treatment provided to K.N.H., Defendant KBH and its employees acting within the scope of their employment, deviated from the local community standard of care.

39. As a result of KBH's negligent, grossly negligent, and reckless conduct, Plaintiffs suffered damages to include past and future emotional and physical pain and suffering, mental anguish, emotional distress, disability, loss of society and companionship, expenses for past and future medical treatment, and punitive damages, as well as costs and reasonable attorneys' fees.

## COUNT THREE
### Violation of 42 U.S.C. § 1983 and denial of substantive and procedural due process

40. Plaintiffs incorporate the above paragraphs by reference.

41. A minor child has a substantial liberty interest in not being confined unnecessarily for medical treatment, and the State's involvement in the commitment decision constitutes state action under the Fourteenth Amendment.

42. A minor child also has a protectable interest in being free from unnecessary bodily restraints and in not being labeled erroneously by some person because of an improper decision by the State.

43. While parents are presumed to act in the best interests of their children, parents do not have absolute and unreviewable discretion to decide whether to have a child institutionalized. The risk of error in the parental decision to have a child institutionalized for mental health care is sufficiently great that an independent process and inquiry must be undertaken.

44.     In order to satisfy the minimum constitutional requirements of procedural due process, a neutral factfinder must carefully probe the child's background using all available sources, including, but not limited to, parents, schools, and other social agencies.  Said neutral must also interview the child and be vested with sufficient authority to refuse to admit any child who does not satisfy the medical standards for admission.

45.     The minimum constitutional requirements of procedural due process in admitting K.N.H. as described above were violated by KBH, Nurse Leonard Fitzsimmons, and Defendant John Does I through V, whose exact identities are not yet known.  K.N.H. was an involuntary admittee of KBH.

46.     Moreover, KBH assumed a duty to protect K.N.H.'s liberty interest in her own bodily security by virtue of a special relationship and a state-created danger. KBH violated K.N.H.'s substantive due process rights by breaching these duties and in failing to protect K.N.H.'s liberty interests.

47.     At all times, a special relationship existed between KBH and K.N.H. by virtue of those restrictions of movement placed on K.N.H.  For example, K.N.H. was denied the ability to leave the facility with her parents, and visitation between parent and child was severely restricted.

In addition to her forced-upon admission, KBH, Nurse Leonard Fitzsimmons, and Defendant John Does I through V restrained K.N.H. by subjecting her to a locked seclusion room that she was unable to exit.  In essence, Defendants used solitary confinement to punish K.N.H.

Finally, KBH, Nurse Leonard Fitzsimmons, and Defendant John Does I through V used physical restraint and constraint on multiple occasions, one of which caused K.N.H.'s arm to fracture.  When KBH, Nurse Leonard Fitzsimmons, and Defendant John Does I through V took away K.N.H.'s liberty and restricted her movements, they assumed a duty to protect her and her

constitutional rights. Defendants did not protect K.N.H.; instead, their actions amounted to incarceration and punishment similar to that associated with prisons and convicted criminals.

48. KBH, Defendant John Does I through V, and Nurse Fitzsimmons exposed K.N.H. to a danger she would not have otherwise faced but for their acts and omissions described herein.

49. KBH, Defendant John Does I through V, and Nurse Fitzsimmons exposed K.N.H. to the dangers of abuse and of withholding proper and adequate medical care.

50. KBH, Defendant John Does I through V, and Nurse Fitzsimmons exposed K.N.H. to the danger of undue restraint, confinement, isolation, and a restriction on all freedom of movement, including coloring and engaging in play.

51. By acting with deliberate indifference in failing to protect K.N.H. as described above, KBH, Defendant John Does I through V, and Nurse Fitzsimmons knowingly subjected K.N.H. to pain, isolation, fear, terror, and physical and mental injury. At all times, KBH, John Does I through V, and Nurse Fitzsimmons' conduct was egregious, arbitrary, brutal and indecent such that it shocks the contemporary conscience. KBH, John Does I through V, and Nurse Fitzsimmons' violations of K.N.H.'s civil rights caused her severe injuries. For these violations, Plaintiffs seek all available compensatory and exemplary damages permitted at law.

### COUNT FOUR
### Monell Claim Against KBH

52. Plaintiffs incorporate the above paragraphs by reference.

53. KBH either adopted an official policy or had a longstanding practice or custom which constitutes a policy or ratified actions, which ratification amounted to a policy that violated Plaintiffs' constitutional right to be free from unnecessary confinement, unnecessary bodily restraint and right to her own bodily security.

54. KBH failed to have a constitutionally sound policy for admitting minor children into mental health facilities.

55. KBH failed to have a policy consistent with the law related to confining minor children, using restraints, and ensuring minor children are kept free from undue physical harm

56. KBH failed to train its employees regarding an individual's constitutional right to be free from unnecessary confinement and bodily restraint, and to be secure in one's person.

57. KBH's failure to properly train its employees amounts to deliberate indifference to the rights of persons with whom the employees come into contact.

58. Had KBH's staff, John Does I through V, and Nurse Fitzsimmons been properly trained in lawful admissions into mental health facilities and the proper use of confinement and restraint, Plaintiffs' rights would not have been violated.

59. As a result of KBH's policies, customs, and failure to train, Plaintiffs' constitutional rights were violated.

60. As a result of the violations of the constitutional standards set forth herein, Plaintiffs have suffered emotional and mental trauma, to an extent more fully proven at trial.

### COUNT FIVE
### Intentional and/or Negligent Infliction of Emotional Distress

61. Plaintiffs incorporate the above paragraphs by reference.

62. The Defendants' treatment of the Plaintiffs and the Defendants' failure to correct their treatment of the Plaintiffs was intentional and/or reckless.

63. The Defendants' treatment of the Plaintiffs and the Defendants' failure to correct their treatment of the Plaintiffs was extreme and outrageous, and unreasonable such that it caused the Plaintiffs, each of them, to suffer emotional harm.

64. The Plaintiffs' emotional harm was severe in that they experienced mental anguish, anxiety, stress, trauma, fright, agitation, anger, emotional distress, shame, and despair.

## COUNT SIX
### Grossly Negligent Hiring, Training, Supervision, and/or Retention

65. Plaintiffs incorporate the above paragraphs by reference.

66. KBH had a duty to supervise and train its employees and representatives in the conduct of their respective jobs.

67. KBH knew or should have known of the actions of its employees and their gross and willful failure to follow the law, including constitutional, statutory and administrative procedures.

68. KBH knew or should have known that its staff, including Defendant John Does I through V and Nurse Fitzsimmons, lacked the training, skill, experience and knowledge to conduct themselves in a professional and lawful manner and to avoid injury to those children placed in their care.

69. KBH knew or should have known that once an employee commits an act of violence against a patient, that employee must be immediately removed from the care of the abused patient and that such abuse must be immediately reported to law enforcement and/or child protective services.

70. KBH knew or should have known of the actions of its employees in making false statements to the Plaintiffs, including misrepresenting the events surrounding K.N.H.'s injuries.

71. KBH had a duty to train and supervise its employees to prevent such illegal and reckless behavior.

72. KBH had a duty to supervise employees in the conduct of their jobs and to instruct, train, and discipline those employees who engaged in illegal behavior and fraudulent communication.

73. KBH knew or should have known of its employees' repeated, continuous, and illegal behavior aimed at the Plaintiffs.

74. KBH grossly and willfully breached its duty to train and supervise by failing to take any corrective action for their employees' or representatives' behavior as outlined herein.

75. KBH's gross negligence in its supervision, training, and retention of its employees and representatives proximately caused each Plaintiff to suffer damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants as follows:

A. For compensatory damages in an amount to be proven at trial;

B. For punitive or exemplary damages;

C. For reasonable attorneys' fees and costs;

D. For pre-judgment and post-judgment interest as allowable by law; and

E. For such other further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues pursuant to F.R.C.P. 38(b)(1).

DATED this 26th day of August, 2020.

OWENS, McCREA & LINSCOTT, PLLC


*/s/ Jeffrey R. Owens*
JEFFREY R. OWENS, ISB #7276
Attorneys for Plaintiffs