UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE, on behalf of herself and her minor daughter: K.N.H. (DOB 2010),<br><br>    Plaintiff,<br><br>vs.<br><br>KOOTENAI HOSPITAL DISTRICT, a county hospital district, d/b/a KOOTENAI HEALTH and as KOOTENAI BEHAVIORAL HEALTH; LEONARD FITZSIMMONS, in his individual and employee capacity; and JOHN DOES 1 THROUGH V and CORPORATE DOES 1 THROUGH V,<br><br>    Defendants. | Case No.: 2:20-cv-00423-REP<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S MOTION TO COMPEL**<br>**(Dkt. 22)**<br><br>**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br>**(Dkt. 28)** |

Before the Court are (i) Plaintiff's Motion to Compel (Dkt. 22) and (ii) Defendants' Motion for Protective Order (Dkt. 28). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 9). Because Idaho's peer review privilege does not apply to the as-asserted claims, Plaintiff's Motion to Compel is granted. However, certain of Plaintiff's discovery requests remain overbroad and, to this extent only, Defendants' Motion for Protective Order is granted.

## I. BACKGROUND

On November 7, 2019, eight-year-old KNH was admitted to Defendant Kootenai Behavioral Health ("Kootenai Behavioral") for psychiatric evaluation. According to Plaintiff (KNH's mother), Kootenai Behavioral repeatedly placed KNH in locked seclusion and on several occasions subjected her to physical constraints. On November 14, 2019, while KNH was locked in seclusion due to behavioral concerns, Defendant Leonard Fitzsimmons (a Kootenai Behavioral employee) entered KNH's room, cornered her, and forcibly removed a crayon from

**MEMORANDUM DECISION AND ORDER - 1**

her right hand. An x-ray two days later revealed a fracture in KNH's wrist. This action relates to the circumstances surrounding that incident and KNH's injury.

Plaintiff asserts the following claims against Defendants: (i) child abuse; (ii) negligence and gross negligence (medical malpractice); (iii) violation of 42 U.S.C. § 1983 and denial of substantive and procedural due process; (iv) *Monell* liability against Kootenai Behavioral; (v) intentional and/or negligent infliction of emotional distress; and (vi) grossly negligent hiring, training, supervision, and/or retention. To support these claims, Plaintiff seeks various internal documents from Defendants via discovery. These documents relate to KNH's brief hospitalization and include medical records, incident reports, personnel files, treatment logs, interviews, and hospital policy. Defendants object to the production of such information based on Idaho's peer review privilege, codified at Idaho Code § 39-1392. Defendants separately contend that some of Plaintiff's requests are not proportional to the needs of the case in violation of Federal Rule of Civil Procedure 26. These issues frame the parties' pending motions.

## II.  LEGAL STANDARD

Under Rule 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fun Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

A party may move for an order compelling production by a party who has failed to answer an interrogatory or produce requested documents. Fed. R. Civ. P. 37(a)(3). While the

**MEMORANDUM DECISION AND ORDER - 2**

moving party must make a threshold showing of relevance, the non-moving party has the burden of showing why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper. *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992); *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217, (C.D. Cal. 2009).

### III.  DISCUSSION

A.   **Idaho's Peer Review Privilege Does Not Apply**

Defendants argue that Idaho Code § 39-1392's protections should apply and protect all peer review information from disclosure in discovery. Defs.' Opp. to MTC at 4-8 (Dkt. 27). Section 1392 is a state law that shields from discovery the proceedings and records involved in a medical peer review evaluation. It provides in relevant part:

> [A]ll peer review records shall be confidential and privileged, and shall not be directly or indirectly subject to subpoena or discovery proceedings or be admitted as evidence, nor shall testimony relating thereto be admitted in evidence, or in any action of any kind in any court or before any administrative body, agency or person for any purpose whatsoever. . . .

I.C. § 39-1392b.[1] The objective of the privilege is "[t]o encourage research, discipline, and medical study . . . for the purposes of reducing morbidity and mortality, [while] enforcing and improving the standards of medical practice in the state of Idaho." *Id*. at § 1392.

---

[1] "Peer review" means "the collection, interpretation and analysis of data by a health care organization for the purpose of bettering the system of delivery of health care or to improve the provision of health care or to otherwise reduce patient morbidity and mortality and improve the quality of patient care." I.C. § 39-1392a(11). "Peer review records" include "all evidence of interviews, reports, statements, minutes, memoranda, notes, investigative graphs and compilations and the contents thereof, and all physical materials relating to peer review of any health care organization." *Id*. at § 39-1392a(12). For the purposes of Plaintiff's Motion to Compel, there is no dispute that the information sought represents peer review records generated by a health care organization under section 1392. In other words, this Decision speaks only to whether Idaho's peer review privilege can be asserted in this particular action (a *federal* court case that has both federal and state claims), not whether the information sought is encapsulated within the privilege itself.

**MEMORANDUM DECISION AND ORDER - 3**

In response, Plaintiff correctly points out that federal privilege law generally applies in federal question cases like this one. Pl.'s Mem. ISO MTC at 7 (Dkt. 23); *see also* Fed. R. Evid. 501, Adv. Comm. Notes ("In nondiversity jurisdiction civil cases, federal privilege law will generally apply."). To that end, federal law *does not* recognize a peer review privilege. *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) ("No case in this circuit has recognized the [peer review] privilege," declining to find or create such a privilege when "Congress has twice had occasion and opportunity to consider the privilege and not granted it either explicitly or by implication"). Even so, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501; *but see Agster*, 422 F.3d at 839-40 ("Where there are federal question claims and pendent state claims present, the federal law of privilege applies.").[2] This legal backdrop augurs against a one-size-fits-all approach to applying privileges across federal and state fora – especially when mixed claims are at play. Instead, a closer examination of the claims asserted, cross-referenced against the applicable discovery requests, is required.

Here, two of Plaintiff's six claims against Defendants are premised upon federal law: Plaintiff's (i) Section 1983 claim, and (ii) *Monell* claim. These claims do not arise out of

---

[2] The parties' briefing references *Wilson v. St. Luke's Regional Med. Ctr., Ltd.*, 2014 WL 7186811 (D. Idaho 2014), a decision from this Court touching on "Idaho's peer review statutes." *Compare* Defs.' Opp. to MTC at 4-5 (Dkt. 27), *with* Pl.'s Reply ISO MTC at 2-3 (Dkt. 29). *Wilson* addressed whether these peer review statutes *immunized* defendants from plaintiff's state law claims, including wrongful termination in violation of public policy, tortious interference with contract, tortious interference with prospective economic advantage, and defamation. *Id.* at *6. Significantly, *Wilson* did not confront the contours of Idaho's peer review privilege in federal court cases involving both federal and state claims. *Id.* ("The act provides two separate protections related to the peer review process. First, peer review materials are protected from discovery in legal proceedings. *See* § 39-1392b. Second, those who participate in the peer review process are immunized from civil liability. *See* § 1392c. *Defendants focus on the civil immunity provision set forth in § 39-1392c . . . .*") (emphasis added). Therefore, *Wilson* is not particularly helpful to the *privilege-related* issues presented here, except to acknowledge that the Court in that case looked to state law to help resolve state law claims. This is not new.

**MEMORANDUM DECISION AND ORDER - 4**

Kootenai Behavioral's peer review proceedings themselves; had they, the peer review privilege would not apply. *See, e.g.*, *Toranto v. Jaffurs*, 2017 WL 11420584, at *7-8 (S.D. Cal. 2017) ("Here, the peer review process is expressly tied to Dr. Toranto's antitrust claims. . . . The peer review proceedings themselves are under attack, and without that peer review information, Dr. Toranto will be prevented from bringing his antitrust claims.").

Nor do these claims exist independently from the remaining four state law claims; had they, it may be possible to surgically apply the peer review privilege only to the state law – and not the federal law – claims. *See, e.g.*, *Guzman-Ibarguen v. Sunrise Hosp. and Med. Ctr.*, 2011 WL 2149542, at *12-14 (D. Nev. 2011) (applying Nevada's medical peer review privilege to quality reports of the hospital's quality and safety board because that evidence was relevant only to state law medical malpractice claims and not to the federal Emergency Medical Treatment and Active Labor Act claim); *but see Love v. Permanente Med. Grp.*, 2013 WL 4428806, at *3 (N.D. Cal. 2012) (finding piecemeal application of state privilege law to information relevant only to state law claims "unworkable" because "it would require the producing party to determine to which of the receiving party's claims a particular piece of evidence is relevant" and inevitably lead to repeated judicial intervention).

Rather, these claims are aligned with the state law claims, fused together by common allegations critical of Defendants' conduct in the moments surrounding KNH's injury. These overlapping and coordinated claims cut against a segregated approach and warrant uniform application of federal privilege law. *See, e.g.*, *Leon v. Cnty. of San Diego*, 202 F.R.D. 631, 633 (S.D. Cal. 2001) (federal civil rights action alongside a pendent claim for medical malpractice warranted application of federal privilege law because "it would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes

**MEMORANDUM DECISION AND ORDER - 5**

whose central purpose is to protect citizens from abuses of power by state or local authorities.") (internal quotation marks and citation omitted).

Defendants do not seriously disagree with the interplay between Plaintiff's claims. To be sure, they argue that this action is fundamentally about medical malpractice, premised upon state law, to which the Idaho peer review privilege should apply. Defs.' Opp. to MTC at 4-5 (Dkt. 27). This approach is too simplistic and fundamentally flawed.

First, it ignores the fact that Plaintiff's Section 1983-related arguments exists as a stand-alone claim beside the state law claims, including the claim for medical malpractice. The Section 1983 claim has never been challenged as failing to state a claim, frivolous, or pretextual, and importantly, operates as a basis for this Court's jurisdiction. *See* Compl. at ¶¶ 6-7 (Dkt. 1). Moreover, despite Defendants' *subjective belief* that Plaintiff's Section 1983 claim is without merit because of the voluntary nature of KNH's commitment, Plaintiff counters that KNH was constitutionally entitled to be free from undue bodily restraints, abuse, and excessive force regardless. *Compare* Defs.' Opp. to MTC at 5-6 (Dkt. 27), *with* Pl.'s Reply ISO MTC at 4 (Dkt. 29). The pond is not settled on these critical issues. It is therefore incorrect to describe Plaintiff's Section 1983 claim as a "secondary" or "tertiary" federal claim (as Defendants do) to self-servingly elevate the importance of Plaintiff's state law claims over all others. Plaintiff's Section 1983 claim is not to be minimized in this way. It unequivocally exists as a component part of Plaintiff's claims against Defendants.

Second, Defendants' argument forgets that Plaintiff's Complaint also alleges *Monell* liability, which requires Plaintiff to prove that Defendants failed to train or adequately supervise its employees (like Defendant Fitzsimmons) or that KNH's injury resulted from Defendants' policies or practices. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The requested reports and policies are highly relevant to whether *Monell* liability can be established. It also

**MEMORANDUM DECISION AND ORDER - 6**

seems unlikely that Plaintiff will be able to acquire information on Defendants' policies and practices outside of internal documents such as those requested through discovery. This added context distinguishes this case from a run-of-the-mill medical malpractice action and further justifies the disclosure of the information.[3]

These realities reveal that the instant action is not so state law-centric as Defendants make it out to be. While it is true that state law is involved for several, if not many, aspects of the case, Plaintiff's interrelated Section 1983 and *Monell* claims are equally important (both substantively and procedurally). Accordingly, consistent with case law in this circuit (*see supra*), state privilege law should not apply to preclude the production of information relevant to Plaintiff's federal claims.

This tracks with federal policy favoring broad disclosure over privilege. The Supreme Court has found that "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to every man's evidence" and "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50-51 (1980) (internal quotation marks omitted).[4] Such privileges "are not lightly created or expansively

---

[3] Defendants acknowledge that Plaintiff has "the ability to discover any of Kootenai Behavioral's policies, procedures, or training materials used both before and after the event at issue." Defs.' Opp. to MTC at 8 (Dkt. 27). Whether this has actually happened is not important. The point of discussing Plaintiff's *Monell* claim is to question Defendants' position that Idaho's peer review privilege should apply *because* the action rises and falls with the state malpractice claim.

[4] The Court recognizes that the Idaho peer review privilege exists to encourage frank discussions with the expectation of confidentiality, all for the purpose of improving the quality of medical care. But health care providers already have professional and economic incentives to improve the quality of care they provide (reducing malpractice insurance rates and improving profitability) independent of the availability of strict confidentiality via state peer review statutes.

**MEMORANDUM DECISION AND ORDER - 7**

construed, for they are in derogation of the search for truth." *U.S. v. Nixon*, 418 U.S. 683, 710 (1974).  Further, "[t]he Supreme Court has been especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself" because "the balancing of conflicting interests is a legislative function." *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182, 189 (1990); *see also Agster*, 422 F.3d at 839 (noting Congress's failure to recognize a peer review privilege after having two opportunities to do so).  In short, Idaho's peer review privilege conflicts with the liberal policy of discovery inherent in the federal rules, and this Court declines to recognize and create a new privilege in this action.

Because the Court applies federal privilege law, Defendants' objections to Plaintiff's discovery requests based upon Idaho's peer review privilege are overruled.  Plaintiff's Motion to Compel is granted in this respect.

**B.     Certain of Plaintiff's Discovery Requests Remain Overbroad Despite the Inapplicability of Idaho's Peer Review Privilege to Plaintiff's Claims**

In addition to their peer review privilege-related arguments, Defendants separately argue that the following "three categories" of requested information should be protected from discovery under Rule 26(c)(1): (i) Kootenai Behavioral's "Youth Acute Unit" restraint log during the entirety of Defendant Fitzsimmons's employ with Kootenai Behavioral; (ii) information entered into Kootenai Behavioral's "Midas" software program[5] pertaining to KNH and Plaintiff's allegations; and (iii) internal policy changes at Kootenai Behavioral following

---

As a result, disclosure of peer review records in this case is unlikely to chill Defendants' efforts to continue to meet and confer on how to improve the care they provide.

[5]     According to Defendants, Midas reports are specific investigative reports compiled after an event – in this particular instance, KNH's November 14, 2019 injury.  Defs.' Opp. to MTC at 9 (Dkt. 27).

**MEMORANDUM DECISION AND ORDER - 8**

KNH's hospitalization.  Defs.' Opp. to MTC at 8-10 (Dkt. 27); Defs.' Mot. for Prot. Order (Dkt. 28).  Even though pre-trial discovery is ordinarily accorded broad and liberal treatment (*see supra*), Rule 26 permits the Court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or expense."  *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting Fed. R. Civ. P. 26(c)(1)).  Each category of information is addressed below.

      1.     <u>Youth Acute Unit Restraint Log</u>

Plaintiff's Request for Production No. 27 requests a copy of the Kootenai Behavioral Youth Acute restraint log from the beginning of Defendant Fitzsimmons's employment with Kootenai Behavioral (April 1, 2009) to the present.  RFP No. 27, attached as Ex. A to Owens Decl. (Dkt. 24-1).  Defendants argue that 12 years' worth of restraint log data is not only irrelevant to Plaintiff's claims, but is overbroad and disproportional to the needs of the case.  Defs.' Opp. to MTC at 8-9 (Dkt. 27) (discussing further the burden in needing to redact voluminous identifying information).

The information is relevant to Kootenai Behavioral's notice and opportunity to correct deficiencies in operations and practices.  It also may reveal inadequate training and improper methods of seclusion and restraint being used on minor children.  Pl.'s Mem. ISO MTC at 5 (Dkt. 23).  However, the request's scope is overbroad, particularly as to its lack of tailored focus and excessive duration.  For example, while RFP No. 27 itself requests a copy of the restraint log, Plaintiff's briefing characterizes the request as asking for "a log of those occasions in which said usage *caused a patient serious injury*."  *Id*. (emphasis added); *see also* Fitzsimmons Dep. 289:6-23, 292:21-293:6, attached as Ex. D to Owens Decl. (Dkt. 24-4) (describing "injury to patient" as a "metric" on the restraint log).  This more-limited request is better because it properly correlates injuries caused by the use of restraints to Plaintiff's claims and KNH's injury.

**MEMORANDUM DECISION AND ORDER - 9**

And, relatedly, 12 years of restraint log data is simply too long when KNH was only hospitalized at Kootenai Behavioral for less than one month.

Defendants' Motion for Protective Order is therefore granted in the following respects only: Defendants shall produce a copy of the Kootenai Behavioral Youth Acute restraint log that identifies those occasions where the use of restraint techniques caused serious injury[6] to a patient between November 1, 2012 and November 30, 2019.[7]

2. <u>Midas Reports</u>

Plaintiff's Request for Production No. 15 requests any Midas system documentation relating to any staff assault allegations concerning KNH. RFP No. 15, attached as Ex. A to Owens Decl. (Dkt. 24-1). Defendants argue that "[t]his information is not important to the Plaintiff's claims or the resolution of this matter." Defs.' Opp. to MTC at 9 (Dkt. 27). But any report that "autopsies" an incident is clearly relevant to understanding the incident itself. The Midas system documentation is an example of such a report and is discoverable here.

Defendants' Motion for Protective Order is denied in this respect.

3. <u>Changes at Kootenai Behavioral Since KNH's Hospitalization</u>

During depositions, Plaintiff's counsel asked questions about any changes in Kootenai Behavioral policy and training following KNH's hospitalization. Pl.'s Mem. ISO MTC at 4 (Dkt. 23) (citing Lawhead Dep. 143:4-25, attached as Ex. B to Owens Decl. (Dkt. 24-2); Miewald Dep. 161:1-25, attached as Ex. C to Owens Dec. (Dkt. 24-3); Harding Dep. 100:4-8, attached as Ex. E to Owens Decl. (Dkt. 24-5)). Defendants' counsel objected to this line of

---

[6] The parties shall confer and arrive upon an appropriate definition of "serious injury." In the event this is not possible, the Court will resolve the issue following input from the parties.

[7] Plaintiff may move for additional, older restraint log entries in the event the to-be-produced restraint log clearly reflects that need. Any such motion shall be accompanied by the necessary good cause to depart from the limits imposed here.

**MEMORANDUM DECISION AND ORDER - 10**

questioning because it asked for information pertaining to subsequent remedial measures under Federal Rule of Evidence 407. *Id*. (Defendants' counsel also raised peer review privilege objections). Still, Defendants' counsel mostly permitted the deponent to answer these questions. *Id*. Additionally, in response to written discovery, Defendants claim to have already produced the policies, procedures, bylaws, and administrative practices in existence before and after KNH's injury. Defs.' Opp. to MTC at 10 (Dkt. 27) (citing Answers to RFP Nos. 1-12, attached as Ex. C to Hazel Decl. (Dkt. 27-1)).

In this setting, it is unclear either (i) what Plaintiff seeks to compel, or (ii) what Defendants seek to protect from discovery. *See* Dist. Idaho Loc. Civ. R. 37.2 (discussing need for specific content with Rule 26 and 37 discovery motions). As such, the Court simply confirms here that such information is discoverable (though perhaps not admissible at trial), even if it amounts to a subsequent remedial measure under Rule 407. *Granberry v. Jet Blue Airways*, 228 F.R.D. 647, 651 n.2 (N.D. Cal. 2005) ("Rule 407 governs admissibility. It does not preclude discovery."); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

Because such information is ultimately discoverable, Defendants' Motion for Protective Order is denied in this respect.

## IV. <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Idaho's peer review privilege does not apply to the claims asserted in this case. Plaintiff's Motion to Compel (Dkt. 22) is GRANTED in this respect.

2. Defendants' Motion for Protective Order (Dkt. 28) is GRANTED in part, and DENIED in part as follows:

**MEMORANDUM DECISION AND ORDER - 11**

          a.      The Youth Acute restraint log is relevant, however Plaintiff's formal request for such information is overly broad in scope and duration.  Defendants' Motion for Protective Order is GRANTED in this respect.  Defendants shall produce a copy of the Kootenai Behavioral Youth Acute restraint log that identifies those occasions where the use of restraint techniques caused serious injury to a patient between November 1, 2012 and November 30, 2019.

          b.      The Midas system documentation is discoverable.  Defendants' Motion for Protective Order (Dkt. 28) is DENIED in this respect.

          c.      Information relating to subsequent remedial measures under Rule 407 is not per se precluded from discovery.  To the extent necessary, Defendants' Motion for Protective Order (Dkt. 28) is DENIED in this respect.

     3.      Any supplemental document production shall take place on or before October 15, 2021, unless otherwise agreed upon by the parties.

     4.      To the extent otherwise responsive information has been, or will be, withheld from production on the basis of any applicable privilege, the parties shall produce a privilege log addressing that withheld information.  Fed. R. Civ. P. 26(b)(5)(A).

DATED:  October 6, 2021

_____
Honorable Raymond E. Patricco
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 12**